**UNITED STATES of America, Plaintiff,**

**v.**

**Raymond Freeman ADKINS, Defendant.**

**No. CR–2–78–12.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

July 14, 1978.

On Motion for Dismissal of Indictment
July 21, 1978.

On Motion for Judgment Acquittals
Oct. 23, 1978.

John H. Cary, U. S. Atty., Edward E. Wilson, and J. Michael Haynes, Jr., Asst. U. S. Attys., Knoxville, Tenn., for plaintiff.

J. Robert Boatright, Fuller & Tunnell, Kingsport, Tenn., for defendant.

## MEMORANDA OPINIONS AND ORDERS

NEESE, District Judge.

▮ The one-count indictment herein charges the defendant with having knowingly received, possessed, and transported in commerce, and affecting commerce, a firearm after having been convicted of felonies on three occasions. 18 U.S.C. App. § 1202(a)(1). The defendant moved the Court to strike from the indictment reference to two of such alleged prior convictions on the ground that proof of only one such conviction is sufficient to constitute a violation of the aforementioned statute. Rule 7(d), Federal Rules of Criminal Procedure. The motion lacks merit, and hereby is

DENIED. The indictment herein may properly charge more than one prior felony conviction, and the government is not limited to establishing only one such conviction. *United States v. Burkhart*, C.A. 6th (1976), 545 F.2d 14, 15; *United States v. Fields*, C.A. 6th (1974), 500 F.2d 69, 70[2], certiorari denied (1975), 419 U.S. 1071, 95 S.Ct. 659, 42 L.Ed.2d 667.*

▮ The defendant moved also for its dismissal on the grounds (1) that this prosecution is not for the purpose of vindicating any public right but is for the purpose of punishing him for his refusal to give perjured testimony in a certain state criminal proceeding at the request of an agent of the Federal Bureau of Investigation, and (2) that he is being singled out for prosecution herein arbitrarily while other persons who may have committed this same offense within this district are not being prosecuted. That second ground is insufficient as a matter of law. Accordingly, as to this ground only, the motion hereby is OVERRULED.

---

* Although Judge McCree dissented (at least in part) from the holding in each of these cases, even he agreed that " * * * [n]o error was committed by setting forth the prior convictions in the indictment. * * * " *United States v. Fields, supra,* 500 F.2d at 72, McCree, J. dissenting.

The first ground advanced raises serious questions as to the propriety of the prosecution of Mr. Adkins herein. " * * * In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute * * * generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' * * * " *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604, 611[5], quoting from *Oyler v. Boles* (1962), 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446; *accord: United States v. Cooper,* C.A. 6th (1978), 577 F.2d 1079, 1086. This prosecutorial discretion, " * * * 'if not exercised on a class basis which affects Constitutional guarantees or which is designed to punish the exercise of protected rights is not reviewable by the courts and does not furnish a basis for dismissal of prosecutions.' * * * " *United States v. Cooper, supra,* 577 F.2d at 1086, quoting from *United States v. Perkins,* D.C. Ohio (1974), 383 F.Supp. 922, 928.

" * * * To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.' * * * " *Bordenkircher v. Hayes, supra,* 434 U.S. at 363, 98 S.Ct. at 668, 54 L.Ed.2d at 610 (citations omitted). In so far as the aforementioned motion relates to ground no. 1, same is assigned for an evidentiary hearing on Thursday, July 20, 1978, commencing at 1:30 o'clock, p. m. or as soon thereafter as the same can be reached on the Court's calendar.

## ON MOTION FOR DISMISSAL OF INDICTMENT

The Court conducted an evidentiary hearing on July 20, 1978 on the first ground of the motion of Mr. Adkins for a dismissal of the indictment herein. He failed to show thereon that the decision to prosecute him was made in bad faith and was based on impermissible considerations. *Cf. United States v. Cooper,* C.A. 6th (1978), 577 F.2d 1079, 1086.

Mr. Adkins was transported from the Tennessee state penitentiary to the Washington County, Tennessee jail in response to a writ of habeas corpus *ad testificandum* in connection with his being available as a witness for the defense in the state murder prosecution of Mr. Charles E. Bobo. Mr. Bobo was accused of murdering a Mr. Hilbert to prevent his testifying in another criminal action against Mr. Paul K. Dykes. Mr. Dykes was under indictment also.

Soon after the transportation of Mr. Adkins was completed, he was interviewed by Mr. Norman G. Hundley, Jr., a special agent of the Federal Bureau of Investigation, and Mr. Ronald B. Street, a lieutenant of the Johnson City, Tennessee police department on September 27, 1978. He had been successful in getting a detainer against him from the commonwealth of Virginia removed and was expecting to " * * * meet the parole board * * * " in a few months.

Messrs. Hundley and Street interrogated Mr. Adkins concerning his acquaintance with Messrs. Dykes and Bobo. Mr. Adkins conceded that he knew Mr. Dykes, for whom he had worked at one time, but that, although he had seen Mr. Bobo, he did not know him. These law enforcement officers also sought information of Mr. Adkins concerning Messrs. Wallace and "Toby" Steadman. Their primary aim, however, seems to have been to gather information which would have placed Messrs. Dykes and Bobo together a brief time before Mr. Hilbert was killed.

Mr. Hundley suggested to Mr. Adkins that it was " * * * possible * * * " that Mr. Bobo " * * * might say * * * " on his trial that Mr. Adkins " * * * was in as good a position as anyone else to kill

Mr. Hilbert, * * *" and that Mr. Adkins " * * * possibly had as good a reason as anyone * * *" to kill Mr. Hilbert. He pictured to Mr. Adkins Mr. Bobo " * * * up there in his $200 suit, looking good * * *" and escaping punishment for his criminal deeds, while Mr. Adkins would be confronted simultaneously with Mr. Bobo's accusatory charge.

Mr. Adkins assured his inquisitors that he had had nothing to do with the murder of Mr. Hilbert, knew nothing about anyone who did, and desired only to complete in the following January his sentence to the extent that he would be released on parole. Mr. Hundley then reminded Mr. Adkins that he (Mr. Adkins) still had pending against him " * * * that federal gun charge. * * *"

Mr. Adkins inferred from all this that the officers were planning to try to prove by two witnesses that he had killed Mr. Hilbert, and that, if he did not testify in Mr. Bobo's trial that he (Mr. Adkins) had seen Messrs. Bobo and Dykes talking shortly before the Hilbert murder and that Mr. Dykes had hired Mr. Bobo to kill Mr. Hilbert, " * * * they wuz gonna put this gun charge on me. * * *" Thomas McKinney, Jr., Esq., consulted with Mr. Adkins on the following day, and Mr. Adkins reported to this attorney as facts the same information he had inferred from his contact with Messrs. Hundley and Street the day before. Mr. McKinney described Mr. Adkins as " * * * as nervous as I have ever seen any man, * * *" so much so that he was unable to roll a handmade cigarette. Mr. McKinney undertook to assuage Mr. Adkins' fears that he would be prosecuted herein because so long a time had elapsed since the offense with which he is charged herein was claimed to have been committed.

While the Court does not view with complete relish the tactics utilized on Mr. Adkins by these law enforcement officers, it must be found and concluded from the record as a whole that they tried to prevail upon him to testify only to a matter which, as Mr. Adkins conceded, was true, i. e., that he (Mr. Adkins) had indeed seen Messrs.

Dykes and Bobo conferring before the time Mr. Hilbert was slain. They are found not to have, as Mr. Adkins urges, threatened to resuscitate the present federal charge against him unless he gave perjured testimony for the prosecution in Mr. Bobo's trial.

The defendant is alleged in the indictment herein to have committed the offense charged on or about May 27, 1976. That indictment was not returned against him until May 23, 1978, a period of precisely 2 years lacking 4 days. A detainer was not placed against him with his most recent custodians until March, 1978.

The prosecuting attorney herein explains this long delay by the fact that " * * * conditions in the office * * *" of the United States attorney of this district were such in the latter 6-months of 1976, the entire year of 1977, and the first 2 months of 1978 that the fact that the Federal Bureau of Investigation had requested authority to prosecute Mr. Adkins herein had escaped his attention until March, 1978, when such authority was granted, and a detainer was lodged against him. This oversight resulted in (1) the prosecuting attorney's failure to undertake to obtain the presence of Mr. Adkins for an earlier trial and (2) in the prisoner's not being advised of the filing of a detainer against him and advice from his custodian of his right to demand trial.

This Court deplores whatever " * * * conditions * * *" there were which caused this inefficient handling of this criminal prosecution in this division. Under different factual circumstances, cf. United States of America, plaintiff, v. Lloyd Cecil Quillen, defendant, no. CR–2–78–5, memorandum opinion and order of March 10, 1978, this Court would order Mr. Adkins' release from custody on this charge in substantive expression of its disapproval. Under the present circumstances, however, this Court can do no more than urge present and future adherence to the fundamental principles of justice and fair play which are to be observed by courts and government attorneys alike.

The motion of the defendant Mr. Raymond Freeman Adkins for a dismissal of the indictment herein now in its entirety hereby is

DENIED.

## ON MOTION FOR JUDGMENT OF ACQUITTAL

The defendant Mr. Adkins moved the Court after the evidence for the prosecution was closed herein for the entry of a judgment of acquittal, on the ground that it is insufficient to sustain a conviction of the offense charged. Rule 29(a), Federal Rules of Criminal Procedure. The Court reviewed the sufficiency of the evidence with all reasonable inferences that might be drawn therefrom in the light most favorable to the prosecution. *United States v. Collon*, C.A. 6th (1970), 426 F.2d 939, 942[2].

It was stipulated that Mr. Adkins was a convicted felon on May 27, 1976. He is charged in the indictment herein with having knowingly received, possessed and transported in commerce and affecting commerce on that date in the jurisdiction of this Court a certain .38-caliber firearm, being a revolver manufactured by the Charter Arms Company and bearing a specific serial number.

There is evidence that he was in possession of a pistol on that date before throwing it toward the underbrush of a tree line. There is evidence also that a witness, who saw Mr. Adkins in such possession and engaging in such throwing, immediately made a brief search, lasting only a few seconds, for the thrown-pistol without finding it. There is evidence furthermore that a pistol was discovered some 1½ to 2 hours afterward in the area in which Mr. Adkins had thrown a pistol earlier, during which time there was abundant opportunity for someone other than Mr. Adkins to have placed another pistol where the pistol described particularly in the indictment herein was found.

Unless the pistol thus discovered (evidenced herein as exhibit # 1) is the same pistol that Mr. Adkins threw into the area where exhibit # 1 was found, the prosecution's proof has not corresponded substantially with the specific allegations of the grand jury in the indictment it returned herein. See *Berger v. United States* (1935), 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314, 1318 (headnote 4), and *United States v. Swarthout*, C.A. 6th (1970), 420 F.2d 831, 833[1].

The test on this motion is whether " * * * a reasonable mind might fairly find guilt beyond a reasonable doubt * * " on the prosecution's evidence, or whether " * * * there must be some doubt in a reasonable mind * * * " thereunder. *United States v. Collon, supra*, 426 F.2d at 942[2]. It is concluded in the Court's mind that there is insufficient evidence under all the facts and circumstances presented that the pistol(s) was or were one and the same to sustain a conviction of Mr. Adkins of the offense *as charged* herein by the grand jury. However, there was disagreement among 12 minds on similar facts as to this matter in an earlier trial and, at this time, at least, this Court cannot say that " * * * a reasonable mind * * * " might not fairly find Mr. Adkins' guilt beyond a reasonable doubt, despite the fact that there is some doubt in the Court's mind. In this situation, the Court overruled the defendant's motion.