888 F.2d 127
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James M. COPPAGE, Plaintiff-Appellant,
v.
COFFEE COUNTY, TENNESSEE, and Freddie Conn, individually and
in his capacity as Sheriff of Coffee County,
Defendant-Appellee.
 No. 89-5154.
 United States Court of Appeals, Sixth Circuit.
 Oct. 31, 1989.
 
 Before KEITH, NATHANIEL R. JONES, and RALPH B. GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, James M. Coppage, appeals summary judgment for the defendant-appellants, Coffee County and Freddie Conn, in this Sec. 1983 action.
 
 I.
 
 2
 At approximately 6:15 p.m. on February 10, 1987, Coppage was arrested in Coffee County, Tennessee by Trooper Savage of the Tennessee Highway Patrol, and charged with Driving Under the Influence, second offense. Both Sheriff Conn and Coffee County claim that on that night Trooper Savage took Coppage before William Bass, a Judicial Commissioner in Coffee County, within two hours of the arrest. The record shows that Conn was presented with a duly executed mittimus, which stated that Coppage failed to post the bail of $2500 and directed Conn to hold Coppage in custody until a hearing on March 30, 1987. J.App. at 69. Coppage maintains that he was never before any type of judge or magistrate.
 
 
 3
 On March 16, 1987, Coppage filed a pro se Writ of Habeus Corpus directed at Sheriff Conn, which he amended on March 24, 1987 with the assistance of counsel. On March 26, 1987, Coppage appeared before the General Sessions Court of Coffee County with a court-appointed attorney. After conferring with his attorney, Coppage entered a plea of guilty, and accepted a sentence of 11 months and 29 days to be suspended after serving 45 days (the amount of time Coppage had spent in jail already). On that same day, Coppage was released.
 
 
 4
 On February 8, 1988, plaintiff-appellant, James M. Coppage, filed a complaint in the United States District Court for the Eastern District of Tennessee, Judge James H. Jarvis presiding, alleging a violation of his civil rights under 42 U.S.C. Sec. 1983 (1982). In his complaint, Coppage alleged that the defendants deprived him of his civil rights. The only claim relevant to this appeal is that defendants denied Coppage prompt preliminary adjudication of the charges against him. Coppage alleged that he did not go before a magistrate after arrest, and in any event, a preliminary hearing was not held within ten days of arrest, as required under Tennessee law. Tenn.R.Crim.P. Rule 5(c)(2).
 
 
 5
 United States Magistrate Robert P. Muran found that there was no genuine issue of material fact because the undisputed evidence indicates that Coppage went before Commissioner Bass.J.App. at 94. The Magistrate then concluded that as a matter of law, Conn was not liable for any failure to have a preliminary hearing within ten days, as required by Tennessee law, because he was entitled to qualified immunity. In particular, because Conn only followed the mittimus which he received, he had a good faith, reasonable belief that the detention of Coppage was lawful. Id. at 107. The Magistrate also recommended summary judgment for Coffee County. He noted that even assuming that Coffee County had authority over the acts of Conn, Coffee County would not be liable because there was no policy causing their officials to violate constitutional rights, and because the court already found that the employee, Conn, was not liable for any violation of rights. Id. at 110. The district court adopted the Magistrate's Report, thereby dismissing the complaint.
 
 II.
 
 6
 We review de novo the decision of the district court to grant summary judgment. Celotex Corp. v. Catrett, 477 US 317 (1986). Fed.R.Civ.P. Rule 56(c) provides that a court may enter summary judgment on a claim if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. "The moving party is 'entitled to a judgment as a matter of law' [where] the nonmoving party has failed to make a sufficient showing on an essential element of her case." Celotex, 477 US at 322-23 (citation omitted).
 
 
 7
 Coppage argues that summary judgment for Conn was improper for two reasons. First, he contends that there was a "genuine issue as to material fact" as to whether he received a probable cause hearing from Judicial Commissioner Bass. Second, Coppage contends that Conn had a duty to take him to a preliminary hearing because the right to such a hearing was established by the U.S. Constitution and by Tennessee law. Therefore, it was not possible for Conn to reasonably believe that there was no constitutional violation.
 
 
 8
 The Magistrate noted that Coppage did not produce any affidavits, but instead was content to rely upon the allegations in his pleadings, and, therefore, concluded that the undisputed evidence indicated that there was a hearing. Even though Coppage did not submit affidavits, we note that he did not merely "rest upon the mere allegations" of his pleadings. Rule 56(e) requires the non-moving party to "set forth specific facts" by affidavits or otherwise. Coppage presented his version of the events in two habeus corpus filings which he submitted into the record. J.App. at 70-71, 74-75.
 
 
 9
 Upon examination of both Coppage and Conn's statement of the facts, we believe that there is a dispute over a material fact. Conn has produced the mittimus allegedly issued by Commissioner Bass, and an affidavit by Charlene Camp, the Clerk of the Court, certifying that the copy of the mittimus is accurate. Even though the mittimus in the record indicates that a hearing was held, we believe that there is not enough evidence for summary judgment. It is possible that the judge did not actually hold the hearing, but simply relied upon the officer's report when he signed the order.
 
 
 10
 However, the Magistrate also determined that summary judgment was proper because Conn is entitled to qualified immunity. Whether qualified immunity is appropriate turns on the "objective legal reasonableness" of the action. Anderson v. Creighton, 483 US 635, 639 (1987) (citing Harlow v. Fitzgerald, 457 US 800, 819 (1982)). In order to meet this standard, Coppage must demonstrate that Conn's action violated a clearly established constitutional right of which a reasonable person would have known. Id. In cases similar to ours, two other circuits have decided that sheriffs are entitled to qualified immunity. In Shouse v. Ljunggren, 792 F.2d 902 (9th Cir.1986), a sheriff held the plaintiff in jail for 36 days without informing him of his right to a parole hearing. The court decided that because the sheriff was holding the plaintiff pursuant to an officer's warrant, and because there was no state law duty upon the sheriff to notify the plaintiff, the sheriff was entitled to qualified immunity from damages. Id. at 906. See also Coleman v. Frantz, 754 F.2d 719, 730 (7th Cir.1985) (court held that there was qualified immunity because an 18-day detention of plaintiff without appearance before a judge or magistrate was not a "clearly established right" and because the length of the detention was not the fault of the sheriff).
 
 
 11
 In the instant case, we find that Conn is entitled to qualified immunity. The record indicates that Conn relied on the mittimus that Commissioner Bass submitted to him. While Coppage contests whether there was a hearing, he does not dispute Conn's assertion that he received a mittimus from Bass. Since Conn relied upon this mittimus, which directed him to hold Coppage in custody, he had a good faith belief that the mittimus was official and acted reasonably in holding Coppage in jail. In addition, we reject Coppage's contention that Conn violated Tennessee law by not providing a preliminary hearing within 10 days. Tenn.R.Crim.P. Rule 5(c)(2) states that the "magistrate shall set the case for a preliminary examination ..." Since Conn had no responsibility to arrange the hearing under Tennessee law, he acted reasonably by not scheduling a hearing. Thus, because Conn acted reasonably in placing Coppage in custody and not scheduling a hearing, he is entitled to qualified immunity under the standard of Anderson.
 
 III.
 
 12
 Coppage also appeals the grant of summary judgment for Coffee County. He alleges that Coffee County had a policy or custom that caused constitutional violations, and therefore is liable for the deprivation of constitutional rights. Without any evidence of a general policy or custom, Coppage argues that a custom can be inferred from a single instance of a violation. In addition, Coppage contends that the lack of an official policy on the procedures for judicial commissioners to follow is a constitutional violation for which Coffee County is liable.
 
 
 13
 Under Monell v. Department of Social Services of New York City, 436 US 658 (1978) and its progeny, governments can be held responsible for damages under section 1983 only when their official policies cause their employees to violate a person's constitutional rights. Coppage relies upon Pembaur v. Cincinnati, 475 US 469 (1986) to show that a single occasion may be enough to establish an unconstitutional municipal policy. The Pembaur Court decided that an action on a single occasion is sufficient where the officials responsible for the action have final policymaking authority. Id. at 483. However, the facts of Pembaur are distinguishable from the present case. In Pembaur, a county prosecutor and a sheriff of Hamilton County ordered deputies to enter a medical clinic to serve process. Because the prosecutor and the sheriff acted as the final decisionmakers in the county, their actions constituted a policy. In the instant case, the affidavit of James Wilhelm, the county executive of Coffee County, stated that there were no policies of the county relating to prompt preliminary hearings other than the laws of Tennessee.J.App. at 53.
 
 
 14
 Coppage also argues that this lack of a policy is itself actionable, according to City of Canton v. Harris, 109 S.Ct. 1197, 1204 (1989). Again the facts are inapposite. In Canton, the Court decided that where a city ordinance gave sole discretion to the police to determine whether a detainee required medical care, the lack of training of these officers may serve as the basis for section 1983 liability if it amounted to "deliberate indifference to the rights" of detainees. Id. In the instant case, the Tennessee statute requires the arresting officer to bring the arrestee before a magistrate to determine if there was probable cause and to set bail. Any hearing after that is to be arranged by the magistrate and other judicial officers. As such, Coffee County's lack of a policy other than the laws of Tennessee does not amount to "deliberate indifference to the rights" of detainees.
 
 IV.
 
 15
 Accordingly, the judgment of the district court is AFFIRMED.